**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **ADRAIN M. BRADY,** | : | **Case No. 2:26-CV-188** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **Chief District Judge Sarah D. Morrison** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| | : | |
| **SHERIFF JEFFREY BALZER,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**ORDER AND REPORT AND RECOMMENDATIONS**

Plaintiff, a resident of London, Ohio, has filed this *pro se* civil rights action under 42 U.S.C. § 1983. (Doc. 1-1). He names Sheriff Jeffrey Balzer, the Delaware County Board of Commissioners, PrimeCare Medical, Inc., Jane Doe, RN, and Jane Doe, MD, as Defendants. (*See* Doc. 1-1, at PageID 10–11).

In his Complaint, Plaintiff expressly states he is suing Sheriff Jeffrey Balzer only in an official capacity and Jane Doe, RN, and Jane Doe, MD, only in their individual capacities. (*See* Doc. 1-1, at PageID 10–11). His motion to proceed *in forma pauperis* has been granted by separate Order pursuant to 28 U.S.C. § 1915. (Doc. 2).

This case is currently before the Court for a *sua sponte* screening of the Complaint to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

## I. Legal Standard

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). That said, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 (noting that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II. Allegations

In his Complaint, Plaintiff alleges that Defendants [1] did not administer a proper "induction" process of treating Plaintiff with Suboxone, leading to life-threatening adverse reactions that implicate a deliberate indifference to a serious medical need claim under the Eighth and Fourteenth Amendments[2] and medical battery and negligence claims under state law.  (*See generally* Doc. 1-1).  He contends that on December 5, 2025, he signed a medical agreement to begin Suboxone treatment on December 20, 2025, and that the treatment protocol "required seven days of oral film induction to ensure patient safety before administrating a high-dose

---

[1] Plaintiff does not specify the particular Defendants at issue with this allegation.  Construing the Complaint liberally, his Complaint only discusses medical treatment.  The Court therefore construes these allegations as having been made against Jane Doe, RN, and Jane Doe, MD.

[2] It is not entirely clear by the face of the Complaint if Plaintiff was a pre-trial detainee (which would implicate the Fourteenth Amendment) or incarcerated (which would implicate the Eighth Amendment).  Plaintiff refers to the Eighth Amendment three times in his Complaint, but the applicable law is dictated by his status at the time of the alleged violations.  (*See* Doc. 1-1, at PageID 12–13, 15).  In construing the Complaint as liberally as may be allowed under these circumstances, the Court will analyze Plaintiff's claims under both the Eighth and Fourteenth Amendments.

300mg injection." (Doc. 1-1, at PageID 15).   Plaintiff alleges that, on the arranged start date of his Suboxone induction protocol, treatment was not administered despite his several inquiries to nursing staff.  *Id*.   He attests that he did not receive a response to his inquiries until December 24 and that the response he received was, "You have been told that you start on [December] 26, now stop sending messages."  *Id*.   Plaintiff relates that he informed nursing staff in writing that starting on December 26 "would not allow for the medically required 7-day induction period before the injection."  *Id*.

On December 26, 2025, Plaintiff alleges that medical staff treated him with a 4mg oral Suboxone strip, then administered the 300mg Suboxone injection one hour later, forgoing the 7-day induction protocol.  (Doc. 1-1, at PageID 15).   Additionally, he attests that the nurse administering the doses "expressed confusion regarding the procedure, having to consult a supervisor on whether to wait ten minutes or an hour, demonstrating a lack of adequate training and a reckless disregard for Plaintiff's safety."  *Id*.   Plaintiff asserts that this procedure went against FDA safety guidelines and the "jail's own agreed-upon protocol."  *Id*.   He alleges that he suffered adverse side effects one hour after the injection, "including vomiting black bile and developing hives and rashes across the face and chest," but that the only treatment he received from medical staff was "topical hydrocortisone," instead of "emergency medical intervention" or "monitoring Plaintiff for internal complications or toxicity."  *Id*.   Finally, Plaintiff contends that medical staff failed to provide a mental health evaluation before his release three days later. *Id*.

Upon release, Plaintiff contends that the combination of Defendants' improper Suboxone treatment on December 26, 2025, and their lack of treating its side effects resulted in the

following "life-threatening complications":

>*Seven (7) emergency room visits post-release.
>*Two and a half weeks of continuous vomiting and inability to eat over a week.
>*Severe constipation and physical distress.
>*Acute psychosis, including severe visual and auditory hallucinations.
>*A subsequent relapse triggered by the physical and mental trauma of the improperly administered medication.

(Doc. 1-1, at PageID 15).   For relief, Plaintiff seeks reimbursement for all post-release medical expenses, including "all ER visits, any follow-up care, and medications [he] had to pay for after [his] release," as well as lost wages from "[his] illness (the 2.5 weeks of vomiting and psychosis) prevent[ing] him from working," physical pain and suffering, and emotional distress.   (*Id*. at 13–14.)   He also seeks punitive damages because "[t]he nurse expressed confusion and ignored the 7-day induction protocol, [] the staff ignored [his] written concerns on [December] 24, [and] the defendants acted with reckless disregard for [his] safety, mental wellbeing, and life."   *Id*. at 14.

### III.    Analysis

In construing the Complaint liberally, Plaintiff brings several claims.   He alleges a failure to train or supervise claim against Defendants Sheriff Jeffrey Balzer in his official capacity, Delaware County Board of Commissioners, and PrimeCare Medical, Inc.   He brings a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Fourteenth Amendments against Defendants Jane Doe, RN, and Jane Doe, MD.   The Court also understands Plaintiff to bring state-law claims for medical battery and medical malpractice against Defendants.

#### A.  Eighth/Fourteenth Amendment Claim Related to Medical Care/Treatment

As an initial matter, because it is unclear from the face of the Complaint whether Plaintiff

was a pretrial detainee or a convicted prisoner during the timeframe at issue, the Court will analyze his deliberate indifference to medical needs claim under both the Eighth and Fourteenth Amendments.  See *Hehrer v. Cty. of Clinton*, 161 F.4th 955, 962 (6th Cir. 2025) ("While the Eighth Amendment's ban on 'cruel and unusual punishments' protects convicted prisoners, the Fourteenth Amendment's ban on 'depriv[ations]' of 'life' or 'liberty' 'without due process of law' protects pretrial detainees." (citations omitted)).   Although this distinction used to have little practical significance, recent precedent has applied different standards for pretrial detainees, making the constitutional source of the claim more important.  *See id.* at 963.   The standard for the Eighth Amendment claim has not changed.   If brought under the Eight Amendment, a prisoner's deliberate indifference to medical needs claim has both an objective and subjective component.  *Helphenstine v. Lewis Cty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).   As the *Helphenstine* Court explained:

> The "objective component" addresses the conditions leading to the alleged violation: it "requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution." The "subjective" component, meanwhile, addresses the officials' state of mind and requires a plaintiff to show that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* (citations omitted).

By contrast, the Sixth Circuit has adopted an "easier-to-meet" subjective standard for pretrial detainees under the Fourteenth Amendment."  *Hehrer*, 161 F.4th at 963.   Under the Fourteenth Amendment, a pretrial detainee must plausibly allege "(1) that [he] had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), [and] also

6

recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine*, 60 F.4th at 317. As it relates to medical care, the Sixth Circuit has explained that:

> Generally, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). But "a doctor's provision of 'grossly inadequate medical care' to an involuntary detainee may amount to deliberate indifference." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Terrance*, 286 F.3d at 844). "Grossly inadequate medical care is medical care that is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Terrance*, 286 F.3d at 844). And when the medical need is obvious, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance*, 286 F.3d at 843 (citation omitted).

*Id.* at 322.

### 1. Plaintiff's Claim against the Individual-Capacity Defendants

At this stage of the proceeding, the Court finds that Plaintiff has sufficiently alleged both elements, under either Constitutional Amendment framework. Specifically, Plaintiff alleges there was an agreed upon treatment plan to treat his drug addiction with Suboxone, that the medical staff knowingly disregarded that plan and his inquiries about it, that the administering nurse Defendant Jane Doe R.N. "expressed confusion" as to the proper procedure for administration of the medications, and that Defendants failed to provide him with medical care or monitor his symptoms post injection beyond providing hydrocortisone cream, despite having severe adverse reactions including: vomiting black bile and continuous vomiting for two and a half weeks, acute psychosis with severe visual and auditory hallucinations, and seven emergency room visits post-release.

Accordingly, the Court finds that Plaintiff's deliberate indifference claim can proceed as it

7

relates to Defendants Jane Doe R.N. and Jane Doe M.D. in their individual capacities.[3]

### 2. Plaintiff's Claim against the Delaware County Board of Commissioners

"A municipality is a 'person' under 42 U.S.C. § 1983," meaning "it can be held liable for constitutional injuries for which it is responsible." *Helphenstine*, 60 F.4th at 323 (quoting *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018)). Still, although a local government and its political subdivisions may be considered a "person" for purposes of § 1983, it cannot be held liable for the acts of its employees on a *respondeat superior* theory. *Myers v. Delaware Cty.*, *Ohio*, No. 2:07-CV-844, 2009 WL 3446752, at *3 (S.D. Ohio Oct. 22, 2009). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) ("To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017)).

A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City*

---

[3] While the Court has determined that this deliberate indifference claim may proceed for further development at this juncture, "[t]he court cautions Plaintiff this is only a preliminary determination. The court has not made a determination on the merits of his claim[] or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss [or other appropriate motion] under . . . the Federal Rules of Civil Procedure." *Wiley v. Austin*, No. 8:20CV220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

*of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

In this case, however, Plaintiff does not sufficiently allege how any of "the specific instances of misconduct alleged in the complaint" are connected to a Delaware County policy or failure to train or supervise.  *See Braunskill v. Smith*, No. 1:24-CV-140, 2024 WL 4465269, at *4 (S.D. Ohio June 11, 2024), *report and recommendation adopted*, No. 1:24-CV-140, 2024 WL 4182011 (S.D. Ohio Sept. 13, 2024). Indeed, if anything, Plaintiff's allegations support the contrary.  Here, Plaintiff asserts that Defendants Jane Doe, R.N., and Jane Doe, M.D., went *against* Delaware County Jail's "agreed-on protocol" when they allegedly improperly administered the Suboxone, which belies any argument that the Board of Commissioners had a Policy that could have caused Plaintiff's alleged injuries.  (Doc. 1-1, PageID at 15).  Thus, Plaintiff cannot point to a specific policy or custom that contributed to his alleged harm.

Further, to the extent Plaintiff is trying to bring his *Monell* claim against Delaware County Commissioners for a failure to properly train the medical staff, such allegations still fail to sufficiently allege a *Monell* claim.  According to the Sixth Circuit, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Helphenstine*, 60 F.4th at 323 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  To successfully plead a failure-to-train theory, a plaintiff must plausibly allege that the governmental entity was deliberately indifferent.  *Id.*  This can be shown in two ways.  A plaintiff can demonstrate deliberate indifference by showing either that there was "(1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'"  *Id.* (quoting

9

*Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738–39 (6th Cir. 2015)). Moreover, if a plaintiff is trying to rely on a single-incident theory to show a failure to train, there are an additional three elements that must be met: "(1) that the [government entity's] 'training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 902 (6th Cir. 2018).

Proceeding under a theory of failure to supervise has similar requirements. *See Bickerstaff v. Cuyahoga Cty.*, No. 1:18cv1142, 2020 WL 5626692, at *10 (N.D. Ohio Sep. 21, 2020) (explaining that, to state a claim under a failure-to-supervise theory, a plaintiff must show that "the government's policy or custom was 'representative of (1) a clear and persistent pattern of illegal activity, (2) which the [government] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [government's] custom was the cause of the deprivation of her constitutional rights" (internal citations and quotations omitted)).

Here, Plaintiff's claim against the Delaware County Board of Commissioners should be dismissed because he failed to plausibly allege a pattern of conduct or a single incident that meets the requisite elements outlined above. The Court therefore recommends that Plaintiff's claim against the Delaware County Board of Commissioners be dismissed.

### 3.    Plaintiff's Official Capacity Claim Against Sheriff Jeffrey Balzer

Construed liberally, Plaintiff sues Defendant Sheriff Jeffrey Balzer in his official capacity for a failure to train or supervise Defendants Jane Doe, RN, and Jane Doe, MD. (Doc. 1-1, PageID at 15). For the same rationale underlying Defendant Delaware County Board of Commissioners' dismissal above, the Court recommends that Plaintiff's claim on this count be dismissed.

As this Court has previously explained:

> "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

*Kilkenny v. Gabriel*, No. 2:19-CV-3661, 2019 WL 4601856, at *3 (S.D. Ohio Sept. 23, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:19-CV-3661, 2019 WL 6609211 (S.D. Ohio Dec. 5, 2019).

Plaintiff's official-capacity constitutional claim in this case is subject to dismissal because he has failed to allege sufficient facts to plausibly suggest that his rights were violated by a custom or policy or a failure to train or supervise, as would be required to hold Defendant Balzer liable in an official capacity. *See* Monell, 436 U.S. at 690. Ultimately, because he cannot maintain suit against the County itself, he cannot maintain suit against Defendant Balzer. Accordingly, Plaintiff has failed to state a claim under against Defendant Sheriff Jeffery Balzer in his official capacity, and the Court therefore recommends that the claim be dismissed.

### 4. Plaintiff's Claim against PrimeCare Medical, Inc.

Finally, Plaintiff sues Defendant PrimeCare Medical, Inc., in its capacity of "provider of the medical staff at Delaware County Jail." (Doc. 1-1, PageID at 10). While PrimeCare Medical, Inc., is a private party, ordinarily not amenable to suit under § 1983, the Sixth Circuit has held that a private entity that "contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under 'color of state law.'" *Buchanan v. Hamilton Cty. Sheriff's Dep't*, No. 1:10-CV-503, 2012 WL 6761507,

11

at *5 (S.D. Ohio Nov. 26, 2012) (citing *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993), and

*West v. Atkins*, 487 U.S. 42, 54 (1988)). However, similar to a municipality, a private entity like

PrimeCare Medical, Inc. cannot be held liable under § 1983 for the actions of its employees under

a theory of *respondeat superior*. *See Nauroth v. Southern Health Partners, Inc.,* No. 1:07–539,

2009 WL 3063404, at *10 (S.D. Ohio Sept. 21, 2009) (citing *Thomas v. Coble,* 55 F. App'x 748,

749 (6th Cir. 2003)). Plaintiff must instead show that PrimeCare Medical, Inc.'s employees

followed its custom or policy when committing the alleged constitutional violations and that the

custom or policy was the "moving force" behind the violation. *Monell,* 436 U.S. at 694.

Similarly, as stated above, to proceed on a failure-to-train-or-supervise theory of liability requires

a plaintiff to demonstrate either a pattern of similar conduct or a single incident that demonstrated

the entity "failed to train its employees to handle recurring situations presenting an obvious

potential for a constitutional violation." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738 (6th Cir.

2015). But a plaintiff does not meet their burden "by showing that one nurse was unsatisfactorily

trained, that 'an otherwise sound' training program was 'negligently administered,' or that harm

could have been avoided if the nurse had had 'better or more training, sufficient to equip [her] to

avoid the particular injury-causing conduct." *Id.*

In this case, Plaintiff fails to allege any facts that demonstrate Defendants Jane Doe, R.N.,

and Jane Doe, M.D., were following a PrimeCare Medical, Inc., custom or policy when they

allegedly improperly treated him. In fact, Plaintiff's concern arises from the individual

Defendants' alleged failure to follow the Suboxone protocol he agreed to. But he raises no issues

with the proposed treatment plan itself. (Doc. 1-1, PageID at 15). And again, Plaintiff has failed

to sufficiently allege that there was a pattern or practice of disregarding treatment protocols or that

12

there was a single incident that was so obvious.   Therefore, Plaintiff's claim against Defendant PrimeCare Medical, Inc. should be dismissed.

### B.  Plaintiff's State Law Claims

To the extent Plaintiff is also asserting state law claims for medical battery and malpractice/negligence, the Court will permit, at least at this time, Plaintiff's related state law claims for medical battery and medical negligence/malpractice to proceed against the individual Defendants Jane Doe R.N. and Jane Doe M.D. in their individual capacities.

However, having found that the Court should dismiss Plaintiff's federal claims against Defendants Delaware County Board of Commissioners, Sheriff Jeffrey Balzer, and PrimeCare Medical, Inc., the Undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims as to these Defendants and dismiss such claims without prejudice.   *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025) ("[W]ith any federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well.").

## IV.    CONCLUSION

In short, Plaintiff's Eighth/Fourteenth Amendment claim for alleged deliberate indifference to serious medical needs against Defendants Jane Doe, R.N., and Jane Doe, M.D., in their individual capacities **MAY PROCEED** past the initial screening stage.   The same goes for Plaintiff's state-law claims for medical battery and medical malpractice/negligence against these two Defendants.

But it is **RECOMMENDED** that the Court **DISMISS without prejudice** Plaintiff's federal claims against Defendants Delaware County Board of Commissioners and PrimeCare

Medical, Inc., respectively, for failure to state a claim upon which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); **DISMISS without prejudice** Plaintiff's federal claim against Defendant Jeffery Balzer in his official capacity; and **DECLINE** to exercise supplemental jurisdiction over plaintiff's state law claims as to these three Defendants and **DISMISS** such claims **without prejudice**, 28 U.S.C. § 1367(c)(3).

The Undersigned notes, however, that neither remaining Defendant—Jane Doe, R.N., and Jane Doe, M.D.—is identified by name.   Because Plaintiff has provided insufficient identifying information for these Defendants, *see generally Jones v. Sheriff Officer Unknown of Lancaster Cty.*, No. 8:20CV365, 2021 WL 2351118, at *3 (D. Neb. June 9, 2021), the Court will treat them as unidentified defendants.   Although designation of a "John Doe" or "unknown" defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed, and Plaintiff could identify defendant through discovery. *See Yates v. Young,* 772 F.2d 909 (6th Cir. 1985) (unpublished), 1985 WL 13614, citing *Schiff v. Kennedy,* 691 F.2d 196 (4th Cir. 1982); *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980); *Maclin v. Paulson,* 627 F.2d 83 (7th Cir. 1980); *see also Downie v. City of Middleburg Hts.,* 76 F.Supp.2d 794, 801 n.5 (N.D. Ohio 1999).   The Federal Rules of Civil Procedure do not require the Court to dismiss unknown defendants simply because the plaintiff is unaware of the identity of those defendants at the time of the filing of the complaint.   Rather, "the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie,* 629 F.2d at 642; *see also Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999).

Under the circumstances of this case, it is appropriate to permit service of the complaint on

14

a high-ranking official who could identify Jane Doe, R.N., and Jane Doe, M.D., through discovery. *See Mosby v. Doe,* No. 08-cv-677, 2009 WL 192502, at *1 (W.D. Wis. Jan. 27, 2009). As Defendant Sheriff Jeffrey Balzer is the current Delaware County Sheriff and therefore is in a position to know or determine the name of these two Defendants, it is appropriate to serve Defendant Sheriff Jeffery Balzer for this limited purpose only. Once Plaintiff discovers the name of these Defendants, he will be required to amend his complaint to identify them, and Defendant Sheriff Jeffery Balzer will be dismissed.

It is therefore **ORDERED** that Plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for Defendant Sheriff Jeffery Balzer for this limited purpose. **Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution.**

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's federal claims against Defendant Delaware County Board of Commissioners be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

2. Plaintiff's federal claims against Defendant Sheriff Jeffrey Balzer in his official capacity be **DISMISSED without prejudice** for failing to state a plausible *Monell* claim, *see Newberry*, 789 F.3d at 646. Defendant Balzer should not yet be dismissed from this case, however, as he will be the stand-in party for service of the unknown individual Defendants.

3. Plaintiff's federal claims against PrimeCare Medical, Inc. be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

4. Any state-law claims against Defendants Delaware County Board of

15

Commissioners, Sherriff Jeffrey Balzer, and PrimeCare Medical, Inc. be **DISMISSED without prejudice**. 28 U.S.C. § 1367.

**IT IS THEREFORE ORDERED THAT:**

1. Within **thirty (30) days** of receipt of this Order, Plaintiff **SHALL** submit to the Court a completed summons and U.S. Marshal form for Defendant Sheriff Jeffrey Balzer.

2. The Clerk of Court is **DIRECTED** to send to Plaintiff a summons form and a U.S. Marshal form for this purpose. Upon receipt of the completed summons and U.S. Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case as directed by Plaintiff. Plaintiff shall be granted leave to proceed against Defendant Sheriff Jeffrey Balzer, solely for the purpose of determining the identities of Defendants Jane Doe, R.N. and Jane Doe, M.D.

3. Plaintiff **SHALL** file a motion to issue service, including updated U.S. Marshal and summons forms, if and when Plaintiff discovers the identities of Defendants Jane Doe, R.N., and Jane Doe, M.D., through discovery. Plaintiff is advised that no service will be issued on Defendants Jane Doe, R.N., and Jane Doe, M.D., unless Plaintiff complies with this Order.

4. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or counsel. Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

16

5.      Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

        **IT IS SO ORDERED.**


                                                                                              /s/ S. Courter M. Shimeall
                                                                                              **S. COURTER M. SHIMEALL**
                                                                                              **UNITED STATES MAGISTRATE JUDGE**


17